Ruggles, J.
 

 John Woodworth purchased of McNaughton a lot of land in Greenbush, for the joint benefit of the complain
 
 *279
 
 ant L’Amoreux and himself. Each contributed equally in making the first payment, and McNaughton executed the deed to Woodworth, who gave his bond and mortgage for $5000, the residue of the purchase money, payable in seven annual instalments, with annual interest. The deed bears date July 30th, 1836. On the same day L’Amoreux executed his bond to Woodworth, in the penalty of $5000, conditioned’ to pay to him $2500 in seven annual instalments, (corresponding in time with the payments to be made by Woodworth,) with annual interest; and at the foot of the condition of the bond is the following clause: “ This bond is given to secure the equal half of a bond and mortgage, executed by John Woodworth to James McNaughton, for the undivided half of a lot of forty-one acres and six-tenths, in Greenbush, in the purchase of which lot the said James and John were equally interested.” The complainant alleges in his bill, that it was expressly agreed between himself and Woodworth, that the whole of the sum of $2500 should be exclusively appropriated towards the cancel-ling of the bond and mortgage on that day given by Woodworth to McNaughton.
 

 On this statement of facts there was a trust on the part of Woodworth, to pay the money to McNaughton; and L’Amoreux might have discharged himself, in equity, from the obligation of the bond, by paying the money, directly to McNaughton. But at law he was liable to pay Woodworth, who was not, however, bound to pay L’Amoreux’s share of the purchase money to McNaughton, until he had received it from L’Amoreux.
 

 On the 27th of December, 1839, Woodworth, being indebted to the defendant Vischer upon a note for $2500, and being pressed for payment or security, and being offered a further advance of money by way o'f loan in case he would secure the debt, proposed to assign to Mrs. Vischer the bond against L’Amoreux, now in question. It was to be provided in the assignment tha L’Amoreux should not be required to pay any part of the principal of the bond until the expiration of two years from the date of the assignment, nor any interest until the expiration of one year from that date. Before the assignment was made, Mrs. Vischer’s attorney called on L’Amoreux and inquired about the
 
 *280
 
 consideration of the bond, and asked him whether he would consent to the assignment. ' He at first declined; but after being informed that he was to have further time for payment, as above mentioned, he consented, provided the assignment was made with the conditions above stated as to time. The assignment was therefore made and executed accordingly; and on the day after the completion of the transfer, Van Vechten, the at torney for Mrs. Vischer, called on L’Amoreux and informed him the bond had been assigned on the terms agreed on, and that Mrs. Vischer expected he would pay the interest to her; to which he replied, “ very well.”
 

 The case turns on the effect of L’Amoreux’s consent to the transfer of the bond. Without his consent the assignment would have transferred the bond subject to the trust. Such an assignment would have been of no value to her. It would have been a vexatious burthen instead of a benefit. Mrs. Vischer’s object in applying to L’Amoreux for his consent was to obtain a valid security for the debt which Woodworth owed her. Her object could not have been misunderstood by L’Amoreux. It is not to be believed that she was desirous of having the bond subject to an equity which destroyed its value as a security, or that L’Amoreux could have supposed she meant to take it subject to such a burthen. There was no inducement on either side for such an arrangement, and the whole transaction speaks a different language. After the explanation which L’Amoreux gave to Van Vechten in relation
 
 to
 
 the origin and consideration of the bond, it is not to be believed that Mrs. Vischer would have taken the assignment except upon the understanding that she was to have the bond for her own use and benefit. His consent was. unnecessary except for that purpose. He must have regarded it of some importance to her or to himself, for he withheld it at first and until he ascertained that by giving it he would gain time to make the payments. Upon the construction which he now gives to the transaction, his consent was a mere nullity. But this could not have been the meaning of the parties at the time. By fair interpretation his assent to the transfer, and to the payment of the interest to Mrs. Vischer, was an agreement that she might become the real owner of the bond.
 

 
 *281
 
 If, when he gave his consent to the transfer, he had any expectation that the tiioney, when paid by him, was to be applied on the debt due to McNaughton, it was his duty then to have spoken to that effect, because he must have known that Mrs. Vischer did not so understand it, and that she was about to take the assignment on the faith of his consent that she should receive the money to her own use. The principle is well settled that where an assignee takes a chose in action by assignment made with the debtor’s assent, and on the faith of what is said by him at the time, the debtor is estopped to impeach it by any defence inconsistent with the debtor’s declaration.
 
 (Foster
 
 v.
 
 Newland,
 
 21
 
 Wend.
 
 94.) In
 
 Watson’s Ex’rs
 
 v. McLaren, (19
 
 Wend.
 
 562,) Mr. Justice Cowen said that, “ even standing by in silence and seeing a chose in action assigned for consideration, is an estoppel
 
 in pais
 
 against a debtor. The maxim applies that a man who does not speak when he ought, shall not be heard when he desires to speak. The right of the assignee in the present case, however, does not depend on the debtor’s silence when the assignment was made. L’Amoreux, in this case, expressly assented to the transfer, in consideration of forbearance of payment; and the creditor, on the faith of his consent, advanced money to the assignor of the bond. If L’Amoreux, by giving his consent to the transfer, did not intend that Mrs. Vischer should have the benefit of the bond, his words had no meaning, and Mrs. Vischer was misled.
 

 A subsequent transaction between Woodworth and L’Amoreux, affords light on the subject. On the 17th of July, 1840, about six months after the assignment, L’Amoreux and Woodworth entered into an agreement in writing under seal, by which L’Amoreux covenanted to release to Woodworth all his interest in the land purchased of McNaughton, and all the securities taken by him thereon; and Woodworth, on the other hand, covenanted to deliver to L’Amoreux the bond now in question to be cancelled, and to exonerate him from all liability in consequence of the same. This agreement was made with full knowledge that the bond was in Mrs. Vischer’s hands as assignee. .It made an entire
 
 *282
 
 change in the relation previously existing between L’Amoreux and Woodworth. It was an abandonment by L’Amoreux oí his interest in the purchase of the Greenbush land; and of his original equity to have the money due on the bond applied to the payment of McNaughton’s mortgage. In lieu of that equity he took Woodworth’s covenant to repossess himself of the bond in question, and deliver it up to be cancelled. Although the assignment to Mrs. Vischer is not mentioned in the agreement between Woodworth and L’Amoreux, yet that agreement was evidently made with reference to the possession and ownership of the bond by Mrs. Vischer, and the agreement is a strong item of evidence to show
 
 that both
 
 parties understood, at that time, that the bond and the money secured by it belonged to her.
 

 This is not the case of the failure of the title to the land for which the bond was given. The case of
 
 Rice
 
 v.
 
 Goddard,
 
 (14
 
 Pick.
 
 293,) is unlike the present. In that case the vendor oí the land, for which the note there in controversy was given, had no title, and the purchaser who gave the note was turned out of possession. The consideration of the note, therefore, failed. But in the present case McNaughton’s title is unimpeached, and Woodworth’s title would have been perfect if he had paid the purchase money. Nor has the consideration oí the bond failed. The bond was given by L’Amoreux for an interest in the land. While the bond was in the hands of Mrs. Vischer, as assignee by his consent, L’Amoreux gave up his interest in the purchase to Woodworth, and in lieu of that interest took Woodworth’s covenant to obtain and deliver the bond to be cancelled. After having done this, it became immaterial to him what became of the land. Woodworth’s loss in the speculation was no longer the loss of L’Amoreux. And his failure to perform the covenant taken by L’Amoreux, after the assignment of the bond, cannot affect the rights of Mrs. Vischer. To discharge L’Amoreux from the payment of the bond in controversy, would operate as a fraud on Mrs. Vischer. She having taken it from Woodworth on the faith of L’Amoreux’s consent to pay the money to her, he is bound to make good her expectations in that respect.
 

 
 *283
 
 The decree of the supreme court must be reversed, and that of the vice chancellor affirmed, with the costs of the appeal to the supreme court, but without costs in this court.
 

 Decree accordingly.1