WASHINGTON HALL
vs.
GREENBURY PURNELL.

⎫
⎬   MARCH TERM, 1851.
⎭

GREENBURY   PURNELL
vs.
WASHINGTON  HALL  ET AL.

[ALLOWANCE OF CREDITS.]

THE defendant exhibited and delivered to the complainant, who was the as-
signee of certain property, subject to an agreement of sale between the as-
signor and the defendant, a statement of the payments he had made the as-
signor on account thereof.   Afterwards discovering receipts for further pay-
ments, not mentioned in the statement, he claimed a credit therefor.   HELD—
That the assignment to the complainant being made *prior* to the receipt by him,
of the statement, from the defendant, and he not being induced to make the
purchase by such statement, or lulled into false security by it, there could
be no sufficient ground for denying the defendant the benefit of the receipts.
If an innocent party is induced, by the obligor, to become the purchaser of a
bond, against which there are equities, it is a deceit upon him, and he ought
not to be subject to the same equity to which the obligor was entitled, against
the obligee.

[The chief object of the bills in these cases was to obtain a
specific execution of an agreement, entered into on the 13th of
December, 1837, between William Crawford, Jr. and the de-
fendant, Purnell, the terms of which are fully set forth in the
Chancellor's opinion.   On the 6th of April, 1841, Crawford
conveyed the property, mentioned in the agreement, subject
thereto, to the complainant, Hall, who afterwards, on the 3d of
September, 1846, filed his bill to enforce the execution of this
agreement on the part of Purnell, alleging that a balance of
$3,500 of the purchase money was still due for the property
from the defendant.   The defendant, Purnell, filed his answer
to this bill, on the 14th of March, 1848, denying that the bal-
ance claimed in the bill was due, and claiming sundry payments
and credits, which would nearly or quite absorb the whole
amount of the purchase money ; and afterwards, on the 14th
of September, 1848, filed his bill, setting forth, amongst other
13*

matters, these payments and credits, and asking an allowance therefor, and praying the execution of the agreement aforesaid on the part of Hall. A commission was issued and testimony taken, chiefly in reference to the credits claimed by Purnell— the nature of which credits and evidence will fully appear in the opinion of the Chancellor.

By an agreement filed on the 27th of March, 1851, all objection to the jurisdiction of the court was waived, and it was agreed, that Hall was bound by all parts of the agreement between Purnell and Crawford, in the same manner as Crawford was bound; and, further, that both cases should be treated as cases for the specific performance of said agreement, and be decreed upon accordingly.]

THE CHANCELLOR:

These cases have been argued together, and are now to be treated, according to an agreement of the parties filed on the 27th inst. as bills by the respective complainants, for the specific execution of the contract of the 13th of December, 1837, between William Crawford, Jr. and the defendant in the case first above mentioned.

Washington Hall, the complainant in that case, having purchased the property mentioned in the agreement, from Crawford, and subject thereto, is, according to the concession of the parties and by the terms of the deed from Crawford to him, bound by all the terms and stipulations of said agreement, to the same extent as Crawford was bound.

By the agreement in question, Crawford sold to Purnell, and Purnell purchased of Crawford, a piece of property in Cecil county, called the "Mill Property," with about one hundred and forty acres of land attached, for the sum of $5,500, of which $2000 were to be paid, and were, in fact, paid at the time; and $3,500 at stipulated periods thereafter, to wit: $1,750 on or before the 25th of March, 1839, with interest from the date of the contract, and the remaining $1,750 on or before the 25th of March, 1840, with interest as aforesaid.

And Crawford, on his part stipulated, to convey the proper-

ty to Purnell, on or before the 25th of March, 1839, free from all incumbrances and demands, and with a general warranty of title. The agreement likewise contained this additional recital and covenant: "Whereas, the Wilmington, &c. Rail Road Company have heretofore changed the original course of the tail race belonging to said mill, and, have agreed with the said Crawford to keep the same well cleansed out, and free from all causes of obstruction, so that the water may, at all times, flow down the same, without any injury to said mill. The said William Crawford, Jr., for himself, his heirs, &c. further covenants and agrees to and with the said Purnell, his heirs, &c., that he, the said Crawford, will guard the interest of the said Purnell, in his deed of conveyance to said rail road company, in binding the said company, in said deed, to pay the said Greenbury Purnell damages that may be sustained by the mill, or its owners, in the alteration made in the tail race, as aforesaid."

The bill filed by Hall, alleges, that the whole sum of $3,500 is due, and seeks to coerce its payment by a sale of the property. That of Purnell alleges, that the whole purchase money is paid, and asks, that Hall may be compelled to execute a conveyance to him, in conformity with the stipulations of the agreement. And the only question which I propose very briefly to examine, and, indeed, the only one which now properly arises in the causes, is, whether the purchase money has or has not been paid; or rather, to what credits Purnell is entitled for moneys paid Crawford, and on account of the injury, which he insists he has sustained, by reason of the non-performance, by the latter, of the covenant in the agreement which has been recited.

It appears, that some time in the summer of 1841, Purnell gave Hall a statement of the payments, &c. on account of the installment due on the 25th of March, 1839, according to which there appeared to be due, of that installment, the sum of $4 25, and, by the same statement, the whole amount of the last installment was represented to be due, amounting, with interest, to $2,131 74. In this statement there was annexed at the

foot, a memorandum, claiming to have set off against the balance that might be due, when the conveyance should be executed.    1st. Damages for not guarding Purnell against the rail road company.    2d. For William Hollingsworth's claim to part of the land ; and 3d. The widow's right of dower.    With regard to this last item, it is admitted, that Purnell did pay the widow referred to the sum of $565 42, and that he is entitled to be credited for that amount, as of the period mentioned in the admission filed in the cause.    Of the credit claimed, on account of Hollingsworth's supposed title to a part of the land, no evidence has been offered, and this credit, therefore, is not to be allowed.

In addition to the credits, contained in the statement thus furnished Hall, by Purnell, and which were the only credits of that character set up by him when he filed his first answer to the bill of Hall, he now produces, and insists in his amended and supplemental answer, that he is entitled to be credited with two other sums, for which he produces Crawford's receipts.    The first of these is dated the 19th June, 1838, for $150 ; and the other the 2d of July following, for $350.

These receipts, it is urged on the part of Hall, are brought forward under circumstances of suspicion, and especially it is contended, that, inasmuch as they were not included in the statement furnished by Purnell to Hall, in the summer of 1841, they should not now be allowed.    This argument would, probably, be entitled to controlling force, if the assignment by Crawford to Hall had been made subsequently to the receipt of the statement by the latter from Purnell.    If, by that statement, Purnell had induced Hall to take the assignment, it would be inequitable now to permit the former to say, that not so much was due as the statement represented to be due.    If, say the court, in 2 *Wash. Rep.,* 392, an innocent man shall be induced to become the purchaser of a bond, by the obligor, against which there are equities, it is a deceit upon him, and he ought not to be subject to the same equity, to which the obligor was entitled against the obligee.    But, in this case, Hall had become the purchaser, prior to the receipt by him, of the state-

ment from Purnell ; and, therefore, he was not induced to make the purchase, by that statement, and there is nothing to show that he was lulled into a false security by it.

That the money expressed in these receipts was paid to Crawford, on account of the property in question, I think there is no reasonable ground to doubt; and, therefore, I can see no sufficient ground for denying Purnell the benefit of them. It may be true, that he has subjected himself to the imputation of great carelessness in the management of his business ; but unless this carelessness can be shown to have operated to mislead or defraud Hall, it would be a severe measure of justice, on that account, to compel him to pay the money a second time. And, especially, I should be reluctant thus to deal with him, in favor of a party, who, by his bill in this case, claimed the whole sum of $3,500, when it is apparent, he very well knew large payments had been made.

That Purnell did not, designedly or knowingly, keep back these receipts, is, I think, shown by the evidence ; and, in truth, no imaginable motive for such conduct can be attributed to him. His conduct has been simply careless and negligent'; but, for this, unless the other party has been subjected to loss or injury by it, I do not think he should be denied the benefit of payments, which it clearly appears, he made. He must, therefore, be credited with these two sums of $150 and $350. I am also of opinion, that he is entitled to be credited with the sum of $10, for cleansing out the tail race, and the $150 under the award of Samuel Hollingsworth and others, in 1839. This latter credit, I understand, is not now controverted ; but no credit is to be given for the $27 94, claimed as an overpayment.

With regard to the credit claimed for further damages supposed to be due, in consequence of the change of the tail race, and for permanent depreciation of the property, by reason of such change, I do not find in the evidence sufficient foundation. The evidence is conflicting in some respects ; but, upon a careful consideration of the whole of it, I am not convinced that any permanent injury has been done the property by the

change. That some obstructions were caused to the race at an early period, and, probably, while the rail road was being constructed, is apparent enough; but, that after it was completed and in operation, the property was permanently injured by it, is, I think, disproved by the weight of evidence. The evidence of Chandler, McKinsey and Kennedy, is strong against this claim. I can discover no reason for doubting their statements; and from the fact that they have been, one or the other of them, in possession and use of the mill property from 1841, their testimony is entitled to the greater weight. They could not be mistaken, and when, therefore, they say, that no injury was done to the property from 1841 to 1848, because of the change of the tail race, I am at a loss to discover upon what ground the court can come to a different conclusion.

The trunk spoken of in the testimony, by means of which the water is conducted across the race, and from the decay of which alone, any possible injury can be done to the property, costs so little, even if the owner or occupier of the mill property has to keep it in repair, or renew it from time to time, that I am persuaded it could have no influence upon its value. It would not cause it to rent for less, or impair its worth if put in the market for sale. I am therefore of opinion, that the credits claimed for further damages, which it is supposed the property has sustained by the change in the tail race, and for permanent depreciation by reason of such change cannot be allowed. The causes will now be sent to a special auditor, according to the understanding of the counsel during the argument, to ascertain the sum, if any, due Hall, in order that a final decree may be passed.

———

JAMES L. BARTOL, for the Complainant.
CORNELIUS McLEAN, for Defendant.