# BLUE VALLEY LUMBER COMPANY V. ABNER CONRO & SON.

### FILED DECEMBER 5, 1900.   NO. 9,271.

1. **Voluminous Evidence: FINDINGS OF TRIAL COURT: DUTY OF COUNSEL.** Where the testimony is voluminous, relating to many subjects, and it is claimed that certain findings of the trial court are not supported by the evidence, it is the duty of counsel arguing in favor of the proposition to call our attention to that portion of the testimony which in any way relates to the subject upon which it is claimed the erroneous finding rests. Where a trial court makes a finding of facts, it is not unreasonable to hold that there exists some testimony relating to the subject, which may be pointed out, even though it is claimed the evidence does not support the conclusions reached.

2. **Plea of Estoppel.** Plea of estoppel pleaded in the reply *held* sufficient to support the introduction of evidence in that respect.

3. **Facts: ESTOPPEL.** By a written agreement Conro & Son, lumber dealers, sold to the Blue Valley Lumber Company a large quantity of lumber in the rough, at a stipuulated price therein named. As a part of the same contract a companion agreement was entered into for planing-mill work to be done by Conro & Son at their planing-mill, located where the lumber was, as directed by the lumber company, at a certain price by the thousand feet according to the nature of the work done, with charges also for sorting and handling the lumber. The lumber, when dressed in the planing-mill into suitable material of different kinds and grades, under the direction of the company and as sold by it, was to ᴸe shipped by Conro & Son, who were to collect the amounts due on account of such shipments and credit the sums so collected on the original contracts of purchase, until the whole amount due or to become due had been paid. After the lumber company had sold to the trade, and had shipped on its orders to whomsoever were the buyers, about two-thirds of the lumber included in the original contracts, it assigned its contracts to one Jaynes, who had, until a few days prior, been its general manager, and who as manager had effectuated the purchase under the original contracts. In the assignment contract it was agreed that before it should become valid and binding the lumber company should be released from all obligations under its original contracts; it was further agreed that, as to the lumber which had been delivered under the original contracts, the lumber company would account to Jaynes at a stipulated price by the thousand feet, and for the mill work done thereon at the same prices mentioned in the original contracts. Against these charges the lumber company was to be credited with all cash, accounts and bills receivable, received and held by Conro & Son (two accounts being excepted), and whatever

balance was found to be due Conro & Son on their original con-
tracts the lumber company agreed to pay Jaynes in cash or
goo l paper. With a duplicate of the assignment contract Jaynes
went to Conro & Son and solicited a release of the Blue Valley
Lumber Company from its obligations under the original con-
tracts, representing that the balance due them for the lumber
delivered and the planing-mill work done would soon be adjusted
as provided for in the assignment contract. Conro & Son exe-
cuted a release on condition that the Blue Valley Lumber Com-
pany would faithfully perform the conditions mentioned in the
assignment contract, and took a transfer of the assignment
contract as collateral security. The release was delivered to
and accepted by the lumber company. The balance due Conro
& Son not being paid, they brought suit for the same on the
assignment contract held by them as collateral security. As a
defense the lumber company pleaded and sought to prove, as
a set-off, that Jaynes was, at the time the assignment contract
was transferred to Conro & Son as collateral security, indebted
to the company in the sum of $5,000. *Held,* Under the pleadings
and the evidence, that the lumber company was estopped from
claiming a set-off as against Conro & Son for the amount due
them under the contract; that Conro & Son relied on, and had
a right to rely on, the provisions in the assignment contract
for the payment of the balance due them by the lumber com-
pany, undiminished by any set-off by reason of the indebtedness
of Jaynes to the lumber company pleaded in the answer.

4. **Evidence:** FINDING. Evidence examined, and found to sustain the
findings and judgment of the trial court.

5. ———: ———. Where the testimony is conflicting, this court will
not disturb the findings based thereon, unless clearly unsup-
ported by sufficient competent evidence.

ERROR from the district court for Douglas county.
Tried below before FAWCETT, J. *Affirmed.*

*Brome & Burnett,* for plaintiff in error.

*John P. Breen, contra.*

HOLCOMB, J.

On January 9, 1892, Conro & Son, defendants in error,
wholesale lumber dealers of Rhinelander, Wisconsin, un-
der a written contract, sold to the Blue Valley Lumber
Company of Omaha, plaintiff in error, about 6,000,000
feet of pine lumber in the rough, at the agreed price of
$12 per thousand feet; about 900,000 feet of an inferior

grade, and about 85,000 feet of culls for $4.50 per thousand feet. A quantity of shingles and lath were also included in the contract of sale at a certain price per thousand, as therein named. Contemporaneous with the sale contract of the lumber mentioned a companion agreement was entered into, both agreements being part of an entire contract, by which Conro & Son agreed to dress in their planing mill, located at the same place, the rough lumber heretofore mentioned, into suitable material of different kinds and grades ordinarily used in the trade. Under the planing-mill contract, so much per thousand, according to the kind of lumber, was to be paid for the planing or dressing, which was to be done as directed by the purchaser, the Blue Valley Lumber Company. There were also in this agreement provisions for charges for sorting and handling the lumber required in its preparation for sale and shipment to the trade generally. Under these contracts it seems to have been contemplated that the rough lumber, when dressed under the planing-mill contract into suitable material and different grades, and as sold to the trade by the Blue Valley Lumber Company, the purchaser under the contract mentioned, and as by them directed, was to be shipped by Conro & Son, who were to collect the amounts due on account of such shipments and credit the Blue Valley Company with the amounts so collected, and in this manner Conro & Son were to receive payment of the sums due them for the sale of the lumber, and the planing-mill work to be performed thereon. On the 4th day of August following, and after about two-thirds of the lumber purchased had been sold by the Blue Valley Lumber Company, and shipped by Conro & Son at their direction to whomever might be the purchaser, they assigned all their right and interest in the contract mentioned to one Fremont N. Jaynes, who until August 1 had been the general manager of the Blue Valley Lumber Company. and who, as general manager, had effectuated the contract of purchase first mentioned. In

the contract of assignment of August 4, which will here-after be designated the Jaynes contract, it was substantially the agreement of the parties thereto that all of the rights of the Blue Valley Lumber Company under the original contracts of purchase were sold and transferred to Jaynes; that the contract of assignment was not to be effectual or binding until there had been procured a release from Conro & Son in favor of the Blue Valley Lumber Company of all the obligations assumed by it under its original contracts of purchase. With respect to that part of the contract which had been executed, that is, of the lumber originally contracted for which had been delivered and sold to the trade by the Blue Valley Lumber Company, it was agreed the company should account to Jaynes for all such lumber so delivered and sold at so much per thousand feet, ranging in price from $35 per thousand feet for the grades called A and B select, down to $7.50 per thousand feet for the lower grades. Dimension stuff, shingles and lath were to be accounted for at the same prices named in the original contract of purchase with Conro & Son. For the planing-mill work it was to settle with Jaynes at the same prices mentioned in the planing-mill contract. Against these items charged to the Blue Valley Lumber Company for lumber delivered to it and sold were to be placed the following credits: first, all moneys received by Conro & Son from all sources on account of said contracts; second, the amounts of all open accounts and bills receivable held by Conro & Son for shipments of lumber, except two accounts specifically mentioned; and third, it was agreed that if the amount of moneys received by Conro & Son, with the amount of unpaid accounts and bills receivable held by them, were not sufficient to pay Conro & Son for the amount due them for the lumber already delivered and sold by the Blue Valley Lumber Company, and the planing-mill work done thereon, then the Blue Valley Lumber Company, as soon as the amount of the balance could be definitely ascer-

tained, would settle with Jaynes, the assignee, for the amount thereof in cash or good paper. With this contract of assignment it appears that Jaynes, on or about August 15, went to Conro & Son, at their place of business, and solicited a release in favor of the Blue Valley Lumber Company, as called for by the terms of the contract of assignment. What was called a conditional release was obtained on August 15, which was given in consideration of the assignment contract being transferred to Conro & Son as collateral security, and in which they agreed to release the Blue Valley Company from any and all liability under said original contracts "upon the said Blue Valley Lumber Company faithfully performing and carrying out the provisions of the said contract" of assignment. The Jaynes contract was assigned to Conro & Son "as collateral security to the performance of the agreement therein contained by me to be performed." After these transactions, Conro & Son instituted suit against the Blue Valley Lumber Company on the Jaynes contract for the balance alleged to be due them, which it was claimed was the sum of $10,447.27. In the answer of the Blue Valley Lumber Company it is pleaded "that it has at all times and in all respects complied with said contract, so as aforesaid made on said 4th day of August, 1892, but this defendant alleges that on said 4th day of August, 1892, there was no sum due said F. N. Jaynes on account of and for said contract, but to the contrary thereof, on said 15th day of August, 1892, there was, and ever since said date has been, due, owing and unpaid from said F. N. Jaynes to this defendant the sum of five thousand dollars ($5,-000.00) on account of and for the adjustment of the matters set forth in and with respect to which said contract was made, and for moneys loaned by this defendant to said F. N. Jaynes," and judgment is prayed for in said sum of $5,000. In reply it was pleaded that as to the amount of money claimed to be due from Jaynes to defendant it does not "constitute a counter-claim, set-off or

defense to this action, and that defendant can not in this case, by reason of the nature of the contracts sued upon and the conduct of defendant in obtaining the contract and conditional release of August 15, 1892, mentioned in the petition, maintain any counter claims or set-off in this case not inherent or connected with the so-called 'Jaynes contract.'" On the trial of the case to the court without a jury it was found that there was due to plaintiff from the Blue Valley Lumber Company $6,649.61, with interest, making in the aggregate $8,148.09, for which judgment was rendered. The trial court also found "that in executing the said conditional release the plaintiff relied upon, and had reason and a right to rely upon, adjustment and settlement being made upon the so-called 'Jaynes contract,' and the amount found due thereon paid over to the plaintiff, undiminished by any counter-claim or set-off existing at the time between the said Jaynes and the defendant company not growing out of the contract itself." As a conclusion of law the court held the defendant company is estopped from setting up or maintaining, in this action, any counter-claim or set-off against the plaintiff unconnected with the so-called Jaynes contract. From the judgment rendered, the Blue Valley Lumber Company prosecutes error proceeding in this court.

But two questions of controlling importance are argued by counsel in their briefs which will be considered. As to each of the two questions it is insisted by plantiff in error that the court erred in its findings for the want of sufficient evidence to support the same. With relation to this subject, counsel for plaintiff in error asserts that there is no evidence to support the conclusions reached, but does not call our attention to any portion of the bill of exceptions, which is composed of about 700 pages of testimony and nearly a thousand exhibits. Counsel for defendant in error says that the evidence not having been pointed out, it can not be expected that we search through such a voluminous record to ascertain whether

or not the findings are supported by the evidence; and counsel for plaintiff in error retorts by saying that he is unable to point out that which does not exist; and thus we are left to make our own examination of the record, unaided by counsel. We think it counsel's duty to at least call our attention to that portion of the testimony which in any way relates to the subject upon which it is claimed the erroneous finding rests. It is true, evidence which does not exist can not be pointed out; yet we think it not unreasonable to hold that when the trial court makes a finding of fact, there exists some testimony relating to the subject which counsel should be able to point out as the evidence relied on, even though it is maintained it does not support the conclusion reached by the trial court. However, we have made our own examination of the record, which we regard as sufficient to direct us as to a proper disposition of the case.

It is urged that the finding of the trial court as to plaintiff in error being estopped from pleading a set-off held by it against Jaynes is unsupported by the evidence and unwarranted by the pleadings. The trial court held substantially to the view that, under the peculiar nature of the contract with Jaynes, the circumstances surrounding its execution, and the procurement of the release in favor of the Blue Valley Lumber Company from all obligations under its original contracts, it was estopped to interpose any set-off in its favor and against Jaynes as against Conro & Son, until they had been paid what was due them by the terms of the contract of assignment. We regard this holding of the trial court as entirely correct and supported by the pleadings and the evidence.

It is pleaded in the reply that, by reason of the nature of the contract and the conduct of the defendant in obtaining it and the conditional release, it can not maintain a set-off not inherent in or connected with the Jaynes contract. While conclusions rather than facts are pleaded, a liberal construction for the purpose of promoting justice will, we think, render the plea suffi-

cient to support the introduction of evidence in that respect. As to the evidence on the plea of waiver or estoppel, it is entirely clear from the contract itself, the agreement of the parties, and the manner in, and the purpose for, which the release was obtained, and the acceptance thereof by the Blue Valley Lumber Company, that it should not be permitted to interpose the defense sought. One of the principal objects to be obtained by the contract of assignment was the release of the Blue Valley Lumber Company from its obligations under the original contracts. By the terms of the Jaynes contract the Blue Valley Lumber Company agreed to settle with Jaynes in cash or good paper for whatever balance might be found to be due Conro & Son. The object of this part of the agreement could be none other than that of effecting a settlement with and payment to Conro & Son for that part of the original contracts which had been executed, obtaining a release of the Blue Valley Lumber Company as to all other obligations then existing under such contracts, and having Jaynes substituted as to all liability in respect of the performance and fulfillment of its conditions and obligations in the future. The evidence discloses that immediately upon the execution of the Jaynes contract in duplicate he proceeded to Rhinelander, Wisconsin, for the purpose of obtaining a release in favor of the Blue Valley Lumber Company of its obligations under the original contracts, and was there joined by an attorney representing the company, who, as soon as the release was procured, accepted the same and returned with it to Omaha. The release was obtained upon the representation that the Blue Valley Lumber Company would, without delay, settle for the balance due Conro & Son according to the terms of the Jaynes contract, and was executed upon the expressed provision that the Blue Valley Lumber Company would faithfully comply with the obligation it had assumed in the Jaynes contract. The Blue Valley Lumber Company accepted the release with knowledge of these provisions,

which are stated in the instrument, and it can not now, we think, be heard to say that because Jaynes was indebted to it at the time of the execution of the contract, it will not perform that which it had agreed to do. Conro & Son relied upon the provision in the Jaynes contract as to a settlement of the balance found due them under the original contracts, and, as rightly found by the trial court, had a right to rely thereon. The Blue Valley Lumber Company has had the benefit of the release thus obtained, and ought not to be permitted to accept the benefits of one part of the contract and escape the burdens of another, as against those who, by its own acts and the terms of its own contract, have been led to execute such release, relying upon a fulfillment of the contract as a consideration for the execution of the release. Such a result would be wholly inequitable, and to us seems repugnant to the idea of good faith and fair dealing between individuals under the obligations of contracts. That an assignee of a non-negotiable chose in action takes it subject to set-off, counter-claim or other valid defense between the original parties, is a rule of general application and is not to be controverted. This principle has been embodied in the statutes. There are, however, exceptions to the general application of the rule, and we think the present case falls within the exception rather than the rule. In this case the only reasonable conclusion to be deduced is that the transactions connected with the assignment contract, the agreement to settle in cash or good paper for the balance when ascertained, its transfer to Conro & Son as collateral security, and the manner of procurement from them of a release of the Blue Valley Lumber Company from its obligations under the prior contract, were all calculated to lead Conro & Son to believe that the balance due them, when ascertained, would be provided for by the lumber company, so that the account to the date of the assignment contract would be fully, finally and completely settled, leaving the further execution of the remainder of

the original contracts a matter between Jaynes, as as-signee thereof, and Conro & Son. Conro & Son relied on these provisions and executed the release by reason thereof. The assignment contract contemplated two principal objects, one, the substitution of Jaynes for the Blue Valley Lumber Company under the original con-tracts; and the other, the release of the Blue Valley Lumber Company from its obligations thereunder. To accomplish the latter, the balance due Conro & Son for the part of the contract performed was to be ascertained and provided for as mentioned. A duplicate of the as-signment contract was given Jaynes and used, as the company must have known and intended it should be used, in securing Conro & Son's consent to the substitu-tion and the release of the Blue Valley Lumber Com-pany from its obligations under the original contracts. It was so used; and that Conro & Son relied on its pro-visions for the payment of the balance due them under the original contracts to the extent that they had been carried out is made clear by the wording of the release. The release was accepted with knowledge of the reliance by Conro & Son in the Blue Valley Lumber Company making good the balance due as provided for. The whole transaction had the effect of leading Conro & Son to believe the balance found due would be paid as provided, irrespective of any set-off or other demand at the time existing against Jaynes and in the company's favor. It would be manifestly unjust to afterwards permit the Blue Valley Lumber Company to interpose as a defense a set-off held by it against Jaynes at the time the assign-ment contract was executed. The rule of estoppel is applicable and will not, in our judgment, permit it to be done. The views herein expressed are abundantly supported by authorities, of which the following may be cited: *King v. Fowler*, 16 Mass., 397; *Bank v. Jerome*, 18 Conn., 443; *Kemp v. M'Pherson*, 7 H. & J. [Md.], 320; *Hall v. Purnell*, 2 Md. Ch., 137; *Jaques v. Esler*, 4 N. J. Eq., 461; *Henry v. Brown*, 19 Johns. [N. Y.], 49; *L'Amo-*

*reux v. Vischer*, 2 N. Y., 278; *Clarke v. Roberts*, 25 Hun [N. Y.], 86; *Trow v. Braley*, 56 Vt., 560.

It is also urged that the trial court's findings of fact as to certain items of charges are unsupported by the evidence. We think the evidence supports the findings. There was a large mass of evidence, and, as mentioned, nearly a thousand exhibits. In the conclusions reached the court reduced the amount from $10,477.27, claimed by plaintiff, to $6,649.61, for which with interest judgment was rendered. In the reduction made are included, no doubt, all the items to the allowance of which valid objection could be urged. The testimony was in many respects conflicting, and this court will not disturb the findings based thereon unless clearly unsupported by sufficient competent evidence.

The judgment should be, and accordingly is,

AFFIRMED.